The appellate is Christopher Turner. You are he, sir. And for the appellee, Stanley New. Is that pronounced correctly, sir? Correct.        I'm going to call the roll. I'm going to call the roll. You may proceed, sir. Good morning, your honors, counsel. May it please the court. I am Christopher Turner, the Illinois Assistant Attorney General, here on behalf of the plaintiff appellant, the people of the state of Illinois. This court should reverse the trial court's grant of summary judgment in favor of the defendant, R.L. Brink Corporation, and instead find that Brink's employees, Mike Allen and Larry Hubbell, were covered by the Prevailing Wage Act when they performed the asphalt core sampling, the nuclear density testing, and the fuel delivery at three road repavement projects. The issue on this appeal is a question of statutory interpretation, and so a pure question of law. That is, whether the Prevailing Wage Act required Brink to pay those two employees a prevailing wage when they performed those tasks on the site of three public road projects. The answer to the question is yes, under the plain terms of the Act. With regard to the asphalt testing, under Section 3 of the Act, Brink employed Allen and Hubbell in actual construction on the site of the construction job when it employed them to conduct the core sampling and the density testing on the asphalt that was being installed in the repavement projects. And with regard to the fuel delivery, under Section 3, the Brink's employees were engaged in the transportation of materials to the job site when they delivered fuel to those sites for use in the equipment that was necessary for the projects. Now this appeal is from a Prevailing Wage Act action against Brink alleges that they failed to pay these two employees the prevailing wage on three public road projects. Each of the public road projects, two were in Adams County, one occurred in Schuyler County. What's not at issue here is whether or not they were public works, the usual issue when we come before your court on this statute. It's undisputed they're all public works, that they were performed for public bodies, that R.L. Brink was a contractor on each of these projects and that these were direct employees of R.L. Brink. The question has to do with whether or not the tasks they performed at the job sites were covered by the Act. And there were two tasks. There was the asphalt testing, which there was two forms of asphalt testing, and then there was fuel delivery. And the basic facts regarding these tasks are not in dispute. The asphalt testing, in each of them the workers used machines at the job site in order to test the composition or the density of the asphalt that was being laid, in order to determine whether or not it complied and conformed with contract specifications. They performed this task at the job site as was necessary. This was a summary judgment action? Correct, Your Honor. Are there any facts in dispute before the trial court? None that are relevant to the outcome of the case, Your Honor. So the question before the trial court, first question is, is there a genuine issue of material fact? Correct, Your Honor. And is your position that there is not? We believe there's no issue of material fact that in fact they are covered. That is correct, Your Honor. Now that's a legal conclusion. The question is, are there any genuine issues of material fact concerning who did what, when, where, and how, leading to whatever conclusion or inference might be drawn? I don't believe so, Your Honor. I don't, I mean, we both agree that they performed these tasks. In the briefing, I think we disagreed over the weight of the machine they used, just in the briefing before this court, but I don't think that's relevant to the outcome. Did they file, they filed a motion for summary judgment, which was granted? Correct, Your Honor. Did you file a cross motion for summary judgment? No, we did not, Your Honor. If there are no facts at issue, why didn't you? Why didn't we file a summary judgment? In other words, if I'm the trial judge and I have this question as to whether the prevailing wage act applies, and the contractor says it doesn't apply, and the facts aren't in dispute, and based upon everything presented to you by affidavits, depositions, and all the other appropriate materials, you should grant summary judgment. I'm a little surprised that on the other side of the equation, you're arguing that it does apply, you wouldn't be moving for summary judgment as well. Or in other words, what else did you expect to present at trial necessitated at trial? I don't know whether or not R.L. Brink had other defenses to liability. There'd be just the facts we'd be laying down, establishing that they performed these tasks, what the prevailing wage rate was for the tasks, that they weren't paid those rates. Assuming they have nothing else and you don't know, as you just said, why don't you file a motion for summary judgment just to find out? I don't know specifically, Your Honor, but our position was that they were covered as a matter of law under the act. Mr. Turner, in your first remarks to the Court, you said that this Court should find Allen and Hubble are covered. However, since you have not filed a motion for summary judgment, where would the Court get authority to do that? We would either affirm the granting of the summary judgment or reverse that. I understand, Your Honor. You could just deny it, although we think that since this is a pure question of statutory interpretation under the plain terms of the act, if you find our way, you'll have decided that with regard to the holding, that they are covered by the act as a matter of law. We would ask then from that holding that you reverse the summary judgment, remand the case for further proceedings consistent with that holding. Again, whether or not they have another defense to liability, I don't know. Whether or not they have a defense to damages, I don't know. But I think in resolving this case, you would, what both parties have agreed is a pure question of statutory interpretation and a question of law that the act, whether or not the act covers these tasks that they perform. So given your position that there are no issues of material fact in dispute, then it's a question of what do the facts as disclosed by this record mean for application of the Prevailing Wage Act? Correct, Your Honor. And why should we conclude that they mean the Prevailing Wage Act covers them? We think that the reasons you should is just under the plain terms of the act. That is, now there's two different tasks they perform, as I said, the asphalt testing and then there's the fuel delivery. I will first... Well, you say there aren't any factual issues that are still need to be resolved. What machinery was the fuel used for? There was in all the testimony was for the equipment and the vehicles. What equipment? What vehicles? We don't know specifically. Equipment and vehicles that had something to do with the construction project? Yes, Your Honor. Do we know that? We do know that, but that was... They were bringing the fuel to the job site to fuel the equipment on the job site. How do I know they weren't filling cars for the supervisors? Your Honor, I mean, that kind of... That would be just pure speculation as to whether or not they were using it for something other than the actual construction. I understand, Counselor. I didn't develop this record, though. I mean, it was developed at the lower court. That would seem to be a fact that this court would be interested in knowing in order to make a determination whether summary judgment was properly granted. Well, I think if you look at the deposition testimony, he did testify that the investigator did testify that it was reported to him from the employees themselves. They were delivering fuel for use of equipment and for vehicles and they were actually filling the equipment and vehicles. Can we consider what the employee said? Yes, Your Honor. You can. You can consider the testimony here from his investigation. We can consider the hearsay testimony for purposes of a summary judgment? You can in this case. There is no objection to the use of this testimony. These were the basic facts that were providing that the defendant himself elicited about what was the nature of the work. What was the nature of the work that the investigation, the department conducted disclosed that occurred at the three job sites? But in any event, there was no deposition taken of Allen or Hubbell, nor were there affidavits submitted by either of them. Is that correct? That's correct, Your Honor. Okay. Go ahead. I'd like to address the asphalt testing first and then the fuel delivery, though obviously if the Court has any questions on either I will entertain those. With the asphalt testing, again the basic question is the relevant language under Section 3 of the Act is were they employed in actual construction on the site of the construction job? And then if you look, the answer is yes. When they did the asphalt testing, that was part, an integral part of the construction. They were testing the asphalt that was being laid the core construction. Was it required in the contract? It was. It's undisputed that it was required under each of the three contracts, Your Honor. You say it's undisputed. Are the contracts in the record? No, Your Honor, they're not. But the fact is not in dispute. It was an affirmative representation made by R.L. Brink in support of its summary judgment motion to the Court. The Court, and neither of us dispute that fact. The Court can look at that fact. It is in the record now. Okay, and that fact is precisely what? That the contracts required R.L. Brink to perform either core sampling or nuclear density testing on the asphalt in order to confirm that it's met the contract specifications. Now, we do think that's an important indicia. Is the sampling done after the pavement is poured, or is it in the course of it? The asphalt has been laid. Is it after the construction work has been completed? Well, no, Your Honor. By definition, it's required to confirm that that asphalt has met the specifications. The job is still ongoing. This is all in the record. These are all facts that this Court can take as, I guess, agreed upon? As agreed upon, yes, Your Honor. It happened after they poured the asphalt. They performed the testing on the asphalt to confirm that it meets the specifications. If it doesn't meet the specifications, they're going to have to rip it out and relay the asphalt. The job, by definition, is not done yet. This is the type of work for a modern repavement project that's required. This is an integral part of the construction work. The construction under the plain terms of the Act, under Section 2, which defines the terms for the Act, defines construction very expansively. It says that it concludes all work that involves laborers, mechanics, or other workers on public works. The use of that broad language, both the non-specific language, all work just involving laborers or on the public works, shows that they meant it to apply to all on-site workers who are involved in some way, or at least integral part. That is very important or necessary to the construction job. We also see that in the filing closet. It specifically says it includes any maintenance or repair or assembly work on equipment. Do you have, did the Attorney General's Office at trial level have any problems with any of the affidavits, depositions, or documents filed in support of the motion for summary judgment on the grounds that they gave cursory or general descriptions of the tasks at issue? They only, I mean, the deposition provided only, I mean, it was their, excuse me, there was no objection I know below specifically. I know that it was their initial burden to put forward information on the tasks at hand. Well, here's the thing, Counsel. If there's a motion for summary judgment and the movement provides stuff, affidavits, depositions, whatever, in support of the motion and the opponent thinks that stuff is bad for whatever reason, conclusory, editorial comment, it's not for personal knowledge under Supreme Court Rule 191A, isn't there an obligation, just good practice, of the opponent to at some point, and indeed as this Court has written, I know because I wrote it, prior to the hearing, raise a challenge in court and say, by the way, Judge, you know that stuff the guy's relying on, it's no good and here's why. Did that happen in this case? Well, we did, I mean, we did oppose it saying that it was irrelevant other than the extent that it showed that the work was covered under the Act. That wasn't my question. The first question was, prior to the hearing, was there any motion or filing of whatever you want to call it by the Attorney General identifying stuff Mr. News relied upon in his motion for summary judgment as flawed for whatever reason? No, there was no separate filing. I mean, in opposition to summary judgment, we said that we disagreed with it and that we thought it was irrelevant, though, to the core question of the statutory interpretation. Well, maybe I'm not being as clear as I want to be. Was there any specific objection raised to the trial court that says, Judge, when you're deciding Mr. News' motion for summary judgment, don't consider, or you shouldn't consider, X, Y, and Z because they were conclusory, they're not based on personal knowledge, it was a 191 affidavit that was flawed for whatever reason. No, Your Honor, other than arguing that we thought it didn't pertain to the question at hand. Well, that's a different question. In other words, the position of the Attorney General to hearing the motion for summary judgment was given what Mr. New has presented in support of his motion, it should be denied. Correct. Not attacking anything that was presented in support of his motion. Not as being inadmissible or improper in that sense, no. At least not that I'm aware of, Your Honor. Go ahead. Under Section 3, it is written broadly and expansively to apply to workers beyond just those who are actually physically laying the concrete and other ones who are an important part of the process. We see that, really, if you look at the limitations in Section 3.2, it sets forth what's the criteria. It says that, on the one hand, you include everyone who is employed on the construction site in actual construction. On the other hand, it is not including those who are employed in the manufacture or processing of materials. Usually, that would occur off-site. You see the dissection that Section 3 is setting up, which is consistent with the purpose of the Act. It's broadly to ensure that all workers on public works are provided a decent wage. If you look at the Hochraffer decision, which is the one decision we both cite that directly addresses who's covered in actual construction, who's not. The question there looked at whether or not they performed the work on-site or off-site, and that was the key question. And whether or not if they performed his work all off-site, in that case it was in the contractor's shop, whether he was covered in the Act. And the Third District said, no, he wasn't. Here, there's no dispute that both these employees did all the work on-site, on the pavement. And where does that come from? We know that from the deposition testimony, again, that that is what they went... It was repeated. The sites, if you look at each of the sites, they performed their work at the job sites. And whose deposition? It was Levery's deposition. He was the investigator. So that gets back to the hearsay portion of this. And are we bound to consider that? Must we consider what would otherwise be inadmissible hearsay if there was no objection made at the trial court level? Because that's now what's in the record. Let's say that that was the only thing that would was inadmissible hearsay. And if the party's lack of objection at the trial court level meant that it comes to the appellate court on this footing, must we consider that evidence? Must we ignore that it is otherwise inadmissible hearsay? Yes, Your Honor. And particularly also because, I mean, if there was an objection to make an appeal, it also wasn't made. Now, it might go to the weight you want to give that testimony and that information, but I still think that at that point the court does the court is required to consider still that evidence that's in the record. Well, we have a doctrine of law that says hearsay received without objection will be given its normal primitive value in the eyes of the trier of fact. Would that apply here as well? Correct, Your Honor. I believe the court is required to consider at that point. It was received without objection at either level. That was the evidence that was put forward before the court in order to determine whether or not these workers were covered by the act. Did the Attorney General at the trial level provide any documents, materials, whatever, in opposition to the motion for summary judgment for the trial court to consider? I know that they attached affidavits by three representatives from the department each attesting that they performed this work. So that was in opposition to the defendant's motion? Yes, that was in opposition. Plaintiff's motion, or defendant's motion. Correct. Did they file anything challenging the affidavits or other materials you presented in opposition to their motion? I'm not aware of anything, Your Honor. So it was just kind of presentable. You have two minutes to go, and then you'll have a chance in rebuttal. I know they opposed it like we did. They opposed what the significance was in their briefing, but I do not remember any motion. Would it be correct to say no one at the trial level objected or raised any challenge to the trial court? The judge? You shouldn't be considering the stuff the other guy presented because there's some flaw. Correct, Your Honor. I'm not aware of anything along those lines. I know the court didn't rule on any such objection either. Counsel, Mr. Whalen, in his deposition, indicated that there had been a recent hearing under, I believe it was Section 9. Is that relevant to us, to this court? And that was with regard to Adams and Schuyler County. I'm not sure what you're referring to, but it wouldn't be relevant to resolving the question of whether or not these workers are covered under the plain language of the Act. I mean, what happens under Section 4 and Section 9 is that those are the administrative proceedings to determine what's the proper rate. Well, as I understand it, the hearing was about material testing classifications as to Adams and Schuyler County. That was the hearing that Mr. Whalen was referring to. My question, does that make any difference to this court, to this litigation? I don't believe so, Your Honor, but I'm not aware of the precedent, but I can't see how it would be. And I don't know of any... What was put into the evidence was that Cook County, it has a separate classification for a separate rate to pay to material testers. Adams and Schuyler County do not have separate classifications. Now, we think that's generally irrelevant to resolving this question, its extrinsic evidence, be relevant to resolving under the plain language of the Act, but the only thing it shows is that the Department has always considered these material testers covered. The time's up, Counsel. Thank you for your presentation. You'll have an opportunity to address us in rebuttal. Thank you, Your Honor. Mr. Newt. If you may please the Court, Counsel. I'd like to call to the Court's attention in the reply brief of the Department footnote number one. I think that summarizes a lot of things that this Court should consider. Now you've got to go check the footnote number one. Okay. Go ahead. Footnote number one in relevant parts says, under the current administration the Department intends to change its position regarding to the type of work at issue. What does that mean? It means... I have no idea. What does it mean? Well, what it means to me is today, under the current administration, the Governor's Office, that the Department for the work in question will not find these as a violation of the Act. For this, if the Court concludes that my interpretation is correct, for this reason alone, the Court should affirm the trial court's order. But I'd like to point out... Well, I don't even understand, one, I'm not sure that's what it means, but how would it be possibly relevant to the issue before us, Mr. New? Well, why should R.L. Brink be held in violation of the Act when today the administration will not find that these three activities are... Well, but we can only address... The judiciary is a passive body. We can only address the cases as they are presented to us, and what happens in the future, or what action... Indeed, if this is a matter which has been changed, maybe the Department through the Attorney General's Office can move to dismiss this action entirely. But they have not. But they haven't, that's right. So here we are, Mr. New, dealing with the case presented. Justices, the theme, I believe, that the Department attempt to convey to the Court is that the trial court read an exception into Section 3 of the Act. Examining the trial court's order, the court opined that the delivery of fuel to a worksite was not engaging in construction. It also opined that asphalt core sampling and nuclear density testing is also not covered under the Act because it is not construction. The trial court also found in its order that there are no asphalt core samplers or nuclear density testers in any of the ordinances in Adams or Schuyler County. The court concluded that those counties do not define the contested employee's work as either laborers, mechanics, or other workers engaged in public works. For that reason, the trial court properly found that the three activities were not included in the definition of construction. The plaintiff also incorrectly construed construction includes all work on equipment. The plaintiff argues that construction expressly excludes all work on equipment. I suggest to the court that this is not correct. The Act states in the first sentence that in Section 3, construction means all work on public works involving laborers, workers, and mechanics. The second sentence then goes into disassembly work performed on equipment. What the plaintiff did is cut and pasted the words all work from the first sentence, coupled with the words work performed on the equipment from the second sentence to conclude that the statute expressly includes work on all equipment. I suggest to the court that that is not what the Section 3 stands for. The term construction material as used by the court... So Section 2 does not include any maintenance, repair, assembly, or disassembly work performed on equipment whether owned or leased or rented? Oh, it does. Absolutely. Section 2 and Section 3 both say that. But that's a separate sentence from workers who are actually engaged in construction. Those are two separate sentences. What apparently happened if I remember the history of the Act is that the Act was amended to include the repair on the equipment because contractors were saying to the Department that this is not covered work so the Act was so amended. Your Honor, the plaintiff did a search of material, a broad search, and concluded from that that the things like fuel is a material. But if you change the search to construction material, it comes out to a different result. According to Black's Dictionary, as I stated on page 8, it's an item used in the construction projects that is added to the structure or building. By the way, excuse me, Mr. New. I want to ask you a question I asked Mr. Turner. Is it your position that there are no genuine issues of material fact before the Court? I don't believe there are. Was the Attorney General's position at the trial level the same? I'm not sure I'm quite understanding. Well, you recall was there an argument made by the Attorney General at the trial level that Brink's motion for summary judgment shouldn't be granted, Judge, because we have genuine issues of material fact on this record? No, that was not raised. Was there any objection made by the Attorney General to any of the materials you submitted in support of your motion for summary judgment? Not to my recollection. To one of the other questions from one of the other Justices, though, I objected to the affidavits. The Court did not rule one way or another. The Court didn't rule? Did not rule. When did you object? At the hearing itself for summary judgment. Well, what was the nature of the problem with those affidavits to which you objected? Going back, I believe it was mostly hearsay. You see, as this Court wrote, because I wrote it, good form, Mr. New, suggests that if you have a problem with the materials submitted by someone in support of the motion for summary judgment, like you shouldn't consider it, Judge, you should be making a motion objecting or to strike it in advance of the hearing so that the other side is put on notice of your position and the Court can then address it. The case was Evidence vs. Brown written five years ago that I wrote, and we said it again and again so that the issue then would come up where we'd have the Attorney General an opportunity to address it and the Court would be in a position to definitively rule. Here, apparently as you pointed out, we have your objection on the record and no ruling by the trial court. I believe that's accurate. So what are we supposed to make of that? Do the Court agree or disagree? I would make it that the Court agreed because the Court found in favor of the defendant that the work was excluded as not construction. Go ahead. The Department makes a big deal, I believe, out of the type of machines that are used. The Department attempts to portray an image that the equipment being used is something that is commonly used in the construction process itself. The nuclear testing machine is something simply placed on the asphalt after the asphalt is laid and the person takes a reading and gives those readings to another person to interpret them. That is not construction. The other issue is the core sampling. That is another machine that is laid on the asphalt after the work is completed. The core sample is taken. The person who took this core sample merely takes it to a laboratory for further testing. I suggest to the Court, how could this possibly be engaging in construction? What if the core test shows that the asphalt was not up to standards? What happens then? Well, my understanding is that if the asphalt was not up to standards, R.L. Brink or any other general contractor would be required to make a fix. The fix could include tearing out the asphalt or doing... Well, that makes it sound like it's part of the contract. The testing is part of the contract. I don't know if it is for certain, but there is testing of all types that are part of the project. A consulting engineer comes and takes samples. These two people were not consulting engineers. They were employees of the contractor, correct? They were employees of the contractor. And they were laborers, were they not? They were not laborers. They were persons who come to the job to do testing. They were testers. That's all they did. That's all they did. There's no evidence in the record that they were engaged in construction with the crews, not that they engaged with those crews. Does the record show that that's all that they did? That's my belief. That's all that's in the record. I don't recall anything else. Is it your argument that the Sections 2 and 3 of the Wage Act should be construed so that the term construction is limited to just helping to build something? Helping to build. Yes, you must be engaged in actual construction. Building something, laying, not necessarily building, constructing a road. What about the transportation materials and equipment to and from the site? Is that part of helping to build something or within the definition of construction? Well, it depends on how you define material. I'd like to go back to... Well, I'm not an engineer, but I'm assuming, let's assume it's steel for the roads or, I don't know, they're transporting materials and equipment to this construction site that will be used in the construction itself. Is that then, is that part of the construction? For your example, Your Honor, of steel, absolutely. But now we get a contrast with fuel. Fuel is being delivered to the site and nothing more. How could that possibly be construed as construction? It is not a material. Well, for instance, I'm just musing now because I'm hardly a construction engineer, but if there are cranes on the site using diesel fuel to power them, they're not going to be moving cranes to the gas station. I would assume that there must be some fueling truck that would move diesel fuel to the cranes to fuel the diesel engine that the cranes are using. At least from my limited understanding, that seems plausible. Would it not be? I think your example is accurate. Okay, well then, why wouldn't the moving the fuel, transporting fuel to the site, be part of the construction process if you're fueling cranes that are clearly being used? Because the Act Section 3 specifically says material. Transportation materials and equipment too are from the site. Right. So materials should be construed narrowly to not include fuel? That is accurate. Is materials defined in the Act in any way? It is not. Is there any court case that attempts to define materials to include only component materials? There is no Illinois case that I found, but I cited a U.S. Court of Claims case which defined material as only those things that are incorporated into the project itself. Is that in your brief? It is. So someone like me who has rather limited understanding of how all this works, I'm supposed to be called upon to define this term and explain what it means? Well, Your Honor, I think if you use our fictional ordinary person standard I'm not sure I'm even up to that, Counselor. If we use such a standard, if I go to a construction site or the Justices go to a construction site, we know what a carpenter is. We can see that a carpenter's got wood, hammers, saws. We all know that's construction. We know what a laborer generally is. From my ordinary observing sites, I observe laborers on buildings. What they do is they carry material all over the place. On road building sites, they dig holes, they rake, they move other materials around. Is this the fundamental question before us or one of the fundamental questions, namely, is the fuel being delivered to fuel cranes covered under the Act or not under the term of materials so that if we conclude that it's materials within the term of transportation materials, you lose and if we conclude otherwise, you win? On that one issue, you framed it correctly. Well, let me ask you about that. The Act also covers the maintenance of equipment, doesn't it? It does. Isn't the most basic maintenance thing is checking the fuel. You check the oil, you check the fuel. That's maintaining the equipment. I would agree, but let's examine who does that. Let's look at our ordinary operating engineer that we see or I saw driving down here operating equipment. It's that person who operates the machine, an operating engineer is the one who maintains it, who checks whether or not the fuel is right. You're telling me the operator fills his own crane or the pavement machine. That's the way it works on the construction site? I'm not absolutely sure, but there is a in the collective bargaining agreement, I know there is a classification of operating engineer as an oiler. I cannot connote other than... Is that before us? It is not. The answer to Justice Turner's question, is that in the materials from which we can make this decision? That is not in the record. I tried to answer the question from... I appreciate that, but isn't that an important question? The question, I think one of the questions the way you framed it, Justice, was if fuel is a material which is undefined in the Act, then R.L. Brink loses on that one activity. And it's also undefined in the case you cited in your brief. The Glaser case that you indicated supported the definition you propose here. It was construing the term construction material, not material as used in the Act here. Two different terms. I think the Glaser case goes along with the theme I'm trying to project to the Court, is that the definition of construction material is stuff that's being incorporated into the project  other things that come to the job site. You're defining a term in your definition as  not material as used in the Act. That is correct. Counsel, is it your position that each county is allowed to decide which workers are covered under the Act? I'm sorry, I didn't hear the question, Justice. Is it your position that each county in the State of Illinois independently decides who is covered under the Act? Absolutely. The Act clearly says it's going to be determined by locality. So if the county says no one is covered under the Act, that is sufficient to comply with our statutory scheme? I don't think that's a statutory scheme. The question is... We have a statute. What is it? The statute says all construction are all workers and mechanics engaged in actual construction. Your hypothetical, Justice, never happens. It sounds like it could under your theory. I don't think so. My theory is that there were 10 counties under a consent decree which agreed that the term material tester 1 and 2 included the type of work that is contested here. In Adams and Schuyler County, they did not address that issue. If they didn't address the issue, the locality concluded that testers are not covered in that county under the Prevailing Wage Act. One minute left. Do you want to wrap up with what you wish to say? Well, yes. I'd like to turn to what the conciliators had said in their deposition. You've got a minute to do it. Testimony. Okay. Wayland, the manager of the department, he says there's no written classification. The laborer, conciliator Lavery, interprets the act that core drilling, if done by a contractor, is covered by the act, while the same function is performed by a testing agency, it's not covered by the act. And Lavery got this opinion, performed this opinion by calling a union. What I'm trying to project to the court... Counsel, time's up. Thank you for your presentation. Thank you, Justice. Mr. Turner, any rebuttal, sir? Yes, Your Honor. Go ahead. Your Honor, first with regard to the term materials, as the court has recognized that the term used in the act is not construction materials, it's materials. And it is not defined in the act, so you should go to its ordinary usage, which we provide a couple of definitions, which are also consistent with any definition I think you'll find. It's a broad definition. Things that are used for making or doing something, something needed for an activity. They specifically did not use a narrower term, such as construction materials. Furthermore, the other... It requires, what should I say, a broad reading of the act as opposed to a more narrow reading. We have different... In the state of Illinois, we have hundreds of different statutory provisions and several different guidances provided for these. Some are to be read broadly and some are to be read narrowly. Do we have any indication which one applies here? Well, generally the presumption is that the statute should be read broadly, and I think that does apply to the Prevailing Wage Act, yes, Your Honor. That is, we cite several Supreme Court cases that statute should be given their fullest interpretation and not their narrowest reading. For instance, in the Landis v. Mark Realty case, that was a case that actually looked at competing definitions, and while here we don't actually... The competing definition of construction materials is not contained in the act. We think that's really dispositive. If the Court were to believe that still it was a reasonable reading of materials, Landis says, no, you should look at what's... It had two competing definitions there of the term statutory, ironically, but it was that you should look at the broader definition in that case when you have those two competing definitions. Mr. New seemed to agree with the question as one of the questions presented here, whether the transportation of fuel to a construction site falls within the definition of materials. He argues it doesn't, and he says if we agree with him, then he wins, and if we disagree with him, he loses on that point. Is that a correct statement? We also agree, yes, if you don't believe that fuel is materials and that it's not included material, then we would lose. I do agree with that, Your Honor. Although, as we point out, it's also consistent with the other language in the act. Section 3 also makes clear that... The phrase of Section 3 itself covers transportation of both materials and equipment. Mr. New seemed to indicate that the operator fills his or her own machine, whatever they're running. Is that correct, or is that in the record? It's something we simply don't know. I believe in the record, at one point the investigator testified that Mike Allen, I think it was Mike Allen, filled the equipment too, but we have to... Counsel also argued that Allen and Hubbell, it sounded as though that their sole responsibility is to do the testing, the core sampling. Do you agree with that, or is that something that we don't know? We also know they did the fuel delivery as well, but I don't think Counsel was trying to imply otherwise. I think he was just focusing on the question. We don't have any other evidence in the record, and I don't know whether they performed other than those tests. Wouldn't that make a difference? That could be an issue, but I don't think it's dispositive. It could be an issue that, yes, if they're also doing asphalt testing and they're laying the concrete, that would be something that would reflect that that's part of what the same laborers are doing. However, the fact that they hire a separate employee to perform the asphalt testing rather than to lay the concrete, that doesn't tell you that they're not still a part of the act. They're employed in the actual construction. Counsel, you have a minute left. What did the trial court go wrong in this case by granting the motion for summary judgment? Your Honor, the court was mistaken primarily because it actually accepted... Well, first of all, it was mistaken because it completely ignored with fuel that Section 3 covers the transportation of materials. It didn't even address that issue. It just said that they weren't involved in construction. With regard to construction, it also mistakenly believed that they didn't help to build anything, that they had no involvement in construction. But most importantly, I think that the court made an error when it relied on the rate schedules. The fact that they didn't have a separate classification as proof that under the plain language of the act these workers weren't covered. It just provides no evidence what the plain language act covers. As we explained in the brief, those rate schedules instead separate out the various workers who are covered under the act into different classifications on a county by county basis. Here, they were covered as laborers under the rate schedule and as truck drivers.